Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9197 | **DATE** | 4/27/2004 |
| **CASE TITLE** | Stephanie Sims vs. Montell Chrysler, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION GRANTING DEFENDANT MONTELL CHRYSLER, INC.'S MOTION TO STAY PENDING ARBITRATION. Status hearing set for May 10, 2004 at 11:00a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | 4-28-04 date docketed | |
| ✓ | Docketing to mail notices. | | 12 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 2 8 2004

STEPHANIE SIMS, )
)
Plaintiff, ) Case No. 03 C 9197
)
v. ) Judge Mark Filip
)
MONTELL CHRYSLER, INC. )
)
Defendant. )

MEMORANDUM OPINION GRANTING DEFENDANT MONTELL CHRYSLER, INC.'S
MOTION TO STAY PENDING ARBITRATION

This matter comes before the Court on Defendant Montell Chrysler, Inc.'s motion to stay pending arbitration. For the reasons set forth below, the motion to stay is granted.

BACKGROUND

Plaintiff filed her complaint against Defendant on December 19, 2003. Plaintiff alleges that she purchased a car from Defendant and that, in short, "Defendant engaged in a pattern of deception in connection with the sale and financing of the car." (D.E. 1 at ¶ 6). Plaintiff has asserted causes of action under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (Count One); the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* (Count Two); and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count Three).[1] After being served on January 26, 2004, Defendant filed its motion to stay pending arbitration on February 17, 2004. Plaintiff has not disputed that she entered into the arbitration agreement that

---

[1] In the introductory paragraph of the Complaint, and in the jurisdictional averments, Plaintiff also references the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Plaintiff does not, however, allege any cause of action under that statute in her actual claims.

Defendant attached to its motion. The arbitration agreement states that "[y]ou and we agree that if any Dispute arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the 'Supplementary Procedures for Consumer-Related Disputes' of the American Arbitration Association then in effect, and such arbitration shall be held in Chicago, Illinois." (D.E. 4 at Ex. A). Included within the definition of "Dispute"

> is any controversy or claim . . . arising or relating to the Vehicle. The term 'Dispute' also includes, but is not limited to, claims relating to the negotiation or breach of any purchase order and/or bill of sale relating to the Vehicle, the financing or negotiation of financing of the Vehicle, any dispute relating to any vehicle service contract . . . [and] any question regarding whether a matter is subject to arbitration under this Agreement.

*Id.* The parties have not engaged in any other motion practice, nor have they participated in any discovery. Defendant has not filed an answer. The parties also have not commenced arbitration proceedings. This case was originally assigned to Judge Kennelly and has since been transferred to this Court.

## DISCUSSION

Defendant's motion to stay is brought pursuant to Section 3 of the Federal Arbitration Act ("FAA"), which provides, in its entirety, that

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. A district court "must grant the requested stay where two conditions are satisfied: (1) the issue is one which is referable to arbitration under an agreement in writing for such

2

arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration." *C. Itoh & Co. (America) Inc. v. The Jordan Int'l Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977); *accord Tarrson v. BLC Partners, LP*, No. 01-7761, 2003 WL 732391, at *6 (N.D. Ill. Feb. 14, 2003) (same). The first condition is met here because Plaintiff has not disputed that she entered the written arbitration agreement or that her claims fall within its scope.[2] This conclusion is buttressed by a recent decision of this Court compelling arbitration and staying proceedings and finding valid and enforceable an arbitration agreement that was very similar, if not substantively identical, to the one in this case. *See Morgan v. Bill Kay Chrysler Plymouth*, No. 01-3871, 2002 WL 31133102 (N.D. Ill. July 17, 2002).[3]

---

[2] A review of the Complaint reveals that Plaintiff's claims all appear to relate to the vehicle and its purchase and financing, and thus are covered in scope by the terms of the arbitration agreement. To the extent any disputes might later arise regarding whether Plaintiff's claims fall within the scope of the arbitration agreement, those issues will be for the arbitrator to decide because the arbitration agreement clearly and unmistakably provides that the arbitrator is to decide "any question regarding whether a matter is subject to arbitration under this Agreement." *See Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 555 (7th Cir. 2002) ("[T]he parties to a contract can if they wish assign the determination of the arbitrability of a dispute to an arbitrator---but then the question of whether they have done that is for the court.") (internal quote and citation omitted); *Greene v. Chase Manhattan Auto. Fin. Corp.*, No. 03-2179, 2003 WL 22872102, at * 4 (E.D. La. Dec. 3, 2003) ("It is clear that the parties intended to submit 'any question regarding whether a matter is subject to arbitration' under the agreement to the arbitrator. It is therefore the arbitrator's duty to decide whether the scope of Greene's claims fall within the terms of the 'Agreement to Arbitrate Disputes.'").

[3] Plaintiff has not contended, much less discharged her burden of establishing, that the arbitration agreement would preclude her from vindicating her statutory causes of action. *See Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (ordering arbitration of TILA claims and stating that "[a] party seeking to invalidate an arbitration agreement must establish that the agreement precludes them from effectively 'vindicating [their] statutory cause of action in the arbitral forum'") (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (ordering arbitration of TILA claims)). *Accord, e.g., Green Tree*, 531 U.S. at 91 (collecting Supreme Court authorities and stating that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration").

Plaintiff's objection to the motion to stay concerns the second condition—that Defendant not be in default. According to Plaintiff, Defendant is in default within the meaning of Section 3, and the motion to stay is premature, because Defendant has not also commenced arbitration proceedings either by moving to compel arbitration or by submitting the dispute to the American Arbitration Association. Put differently, Plaintiff's view is that "in order for a court to stay the litigation in favor of arbitration under Section 3, there must be something in place to stay the proceedings in favor of." (D.E. 7 at 2.) The Court respectfully disagrees.

Precedent teaches that Section 3 of the FAA does not function as Plaintiff suggests. As explained by the Seventh Circuit, "[a] plaintiff who wants arbitration moves for an order to arbitrate. 9 U.S.C. § 4. A defendant who wants arbitration is often content with a stay [pursuant to Section 3], since that will stymie the plaintiff's effort to obtain relief unless he agrees to arbitrate." *Cabintree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389 (7th Cir. 1995); *accord LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 903 (D.C. Cir. 1998) ("Section 3 empowers a district court only to stay an action, leaving to the claimant the choice of arbitrating the claims or abandoning them."); *id.* ("[T]he district court stayed . . . [plaintiff's] actions, instructing her, in effect, that she could not litigate her claims directly in court, but could only arbitrate them or abandon them."). In other words, once a stay is granted under Section 3, litigation of the dispute may end there if the claimant chooses not to pursue its claims in arbitration. Because a stay under Section 3 need not result in arbitration (consistent with any number of legal doctrines, such as burdens of proof and statutes of limitations, which teach that a defendant is not generally required to push claims forward against itself), there is little reason to require that an arbitration be commenced by a defendant against itself before a stay can be

4

ordered.

Accordingly, the United States Supreme Court, the Seventh Circuit, and the other Circuit Courts to address the issue have directed, apparently uniformly, that a defendant may properly move to stay proceedings in the district court, where the Defendant has not otherwise acted inconsistently with its right to arbitrate, without also moving to compel or otherwise commencing arbitration. *See Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers Int'l, AFL-CIO*, 370 U.S. 254, 267 (1962) (affirming stay where the "case was filed [by the employer-plaintiff] on January 4. This was the first occasion for the . . . [union-defendant] to insist upon its right to arbitrate the employer's claim for damages. This it promptly did by moving for a stay in the District Court."); *see also Cabintree of Wisc., Inc.*, 50 F.3d at 389; *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 753 (5th Cir. 1986) ("Contrary to Midwest's suggestion, so long as a written agreement to arbitrate exists there is no specific requirement that arbitration actually be pending before a stay of litigation can be granted.") (citing *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449 (1935)); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 983 (4th Cir. 1985); *Local Lodge No 595 of Dist. No. 152, Int'l Ass'n of Machinists v. Howe Sound Co.*, 350 F.2d 508, 510 (3d Cir. 1965) (granting stay until "an arbitrator has acted upon the controversy should it be submitted to him").

As reflected by the Fifth Circuit's citation of *Shanferoke Coal*, this rule concerning the availability of a stay appears to have a venerable and distinguished pedigree. In *Coal & Supply Corp. v. Westchester Serv. Corp.*, 70 F.2d 297 (2d Cir. 1934), the plaintiff, a sales agent for a coal company, sued the defendant corporation for an alleged breach of a promise to buy certain

coal. The defendant moved to stay under Section 3 of the Arbitration Act, referencing a contractual provision that stated that "either party may apply to the Supreme Court of the State of New York for an order compelling the specific performance of this arbitration agreement in accordance with the arbitration laws of the State of New York." *Id.* at 298. Among the plaintiff's other objections, it stated that the defendant could not obtain a stay because it was in default within the meaning of Section 3 because it had not named any arbitrator, but rather had only expressed a general willingness to arbitrate if required. *See id.* at 299.

Judge Learned Hand, joined by Judges Swan and Augustus Hand, found that the defendant did not need to have named any arbitrator in order to warrant a stay:

> The plaintiff further objects that the defendant is 'in default in proceeding with such arbitration' within the meaning of section 3. True, it has not named its arbitrator, but in its answer and moving affidavits has merely expressed its willingness to submit to arbitration. This appears to us enough. It was the plaintiff who declared the contract to be at an end; and with that the defendant was contented. If the plaintiff meant to proceed further and enforce a claim for damages, the initiative rested upon it; it should have named the first arbitrator. If it did not but sued instead, it was itself the party who fell 'in default in proceeding with such arbitration,' not the defendant.

*Id.* Justice Brandeis, writing for a unanimous Supreme Court, affirmed. *See Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449 (1935). The Supreme Court did not elaborate at length about the issue of whether the defendant had waived its right to arbitration, but instead endorsed the views of the Second Circuit. *See id.* at 454-55. The Supreme Court did make clear, however, that it appreciated that the District court had not been asked to compel arbitration, but rather was asked only to enter a stay. *See id.* at 452-53. And the Supreme Court held that the district court could properly grant a stay, even if one assumed *arguendo* that the district court *never* could compel arbitration in the case and that only a state court could. *See id.*

at 452-53. All of this teaching counsels strongly against any rule that would require a defendant seeking a stay under Section 3 to also have either moved to compel pursuant to Section 4 or otherwise commenced arbitration proceedings.

Against all of this authority, plaintiff cites only *Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Indus. Workers of Am. (AFL-CIO)*, 36 F.3d 712 (7th Cir. 1994), and argues that it mandates a different result. The Court respectfully disagrees.

In *Briggs*, the Seventh Circuit confronted the question of whether there was appellate jurisdiction under Section 16 of the FAA concerning a district court's refusal to stay certain litigation pending arbitration. *See id.* at 715. The Seventh Circuit found that "at oral argument counsel for both sides treated arbitration as a poor cousin" and that "[b]ecause arbitration is contractual, and subject to principles of waiver, a district judge cannot order an arbitration that neither side wants." *Id.* As a result, the Seventh Circuit treated the appeal as a denial of a "request for dismissal under Rule 12(b)(6)" rather than an appeal of a denial of a motion to stay pending arbitration, and dismissed the matter for want of appellate jurisdiction. *See id.* at 716 ("Section 16 of the Arbitration Act does not authorize an interlocutory appeal when there is no arbitration in prospect."); *see also id.* ("In sum, dismissing the appeal does not frustrate the arbitral process or create any risk of duplication or delay.").

In this case, by contrast, Defendant has made no statements repudiating its arbitration rights or taken any actions inconsistent with arbitration. Indeed, in Defendant's reply in support of its motion to stay, Defendant has reiterated "its intent to enforce its right to arbitration under the executed arbitration agreement." (D.E. 10 at 4.) Plaintiff also has not expressed that she will not arbitrate her claims. Thus, this case is distinguishable from *Briggs*. *Accord Briggs*, 36 F.3d

7

at 716 (twice referencing the fact that in *Briggs* both sides preferred litigation to arbitration). Moreover, this case does not involve any issue of interlocutory jurisdiction in any event.

Nor is a denial of the motion to stay commanded by the dicta in *Briggs* that "[w]hen the parties have commenced an arbitration, the court stays the litigation under § 3 to prevent duplicative proceedings (unless the party requesting the stay is 'in default')." *Id.* at 715. It is true that, when read in isolation, this passage may be interpreted to suggest that Section 3 stays are ordered only when the parties have commenced arbitration proceedings. However, two paragraphs later, *Briggs* clarifies that "[t]his is not at all to say that a dispute is 'referable to arbitration' only if a party has made a formal demand; as we discuss below, requests in the course of litigation may suffice." *Id.* at 716; *see also id.* at 717 ("[T]he majority is unquestionably correct in its assertion that a formal demand for arbitration is not a prerequisite for making a proper motion under Section 3 of the FAA for a stay of district court proceedings.") (Cummings, J. concurring in part and dissenting in part). Nor is a different result directed by dicta in *Briggs* that states that "[b]ecause each side had elected not to arbitrate, there is no pending arbitral proceeding. There is nothing to wait for, making a stay inappropriate." *Id.* at 716. That sentence is explained by the next one—which reads that "[b]ecause arbitration is contractual, and subject to principles of waiver, a district judge cannot order an arbitration that neither side wants." *Id.* Again, in the case *sub judice*, neither the Plaintiff nor the Defendant has stated that they will not arbitrate; defendant also has promptly and clearly expressed its position that the dispute should be resolved (if it is to be litigated) in the arbitral forum to which the parties appear to have contractually agreed. *Accord Cabintree of Wisc., Inc.*, 50 F.3d at 389.

In conclusion, the Court respectfully rejects the Plaintiff's suggestion that *Briggs*

mandates that a stay pending arbitration never can be granted unless and until the Defendant moves to compel under Section 4 or otherwise commences arbitration proceedings against itself. Nothing in the text of Section 3 directs that result, and Plaintiff has cited no legislative history in support of that interpretation. Likewise, Seventh Circuit precedent prior to *Briggs* directs that the filing of a motion to stay is a proper method for the initial assertion of arbitration rights. *See Mautz & Oren, Inc. v. Teamsters, Chauffeurs, and Helpers Union, Local No. 279*, 882 F.2d 1117, 1126 (7th Cir. 1989) ("The Union raised the arbitration issue only as an affirmative defense in its answer. In addition, the Union should have moved for an order to compel arbitration, or sought a stay of the litigation pending arbitration . . . . In these circumstances, we believe that the Union preserved its claim that the action should be held in abeyance pending arbitration. . . . [T]he primary responsibility to initiate arbitration proceedings was therefore on [plaintiff], not the Union [defendant]."). Seventh Circuit teaching after *Briggs* expressly acknowledges that a litigant such as Defendant is "often content with a stay" alone pursuant to Section 3 because the case against the defendant will then be "stymie[d]" unless the plaintiff pushes the litigation forward in arbitration. *Cabintree of Wisc.*, 50 F.3d at 389. And, at least from the Court's research on the issue (the parties' briefs are rather abbreviated), it appears that every court that has passed on the issue has found that a defendant need not push litigation forward against itself—by actually commencing arbitration—to warrant an otherwise-legitimate stay under Section 3 of the FAA. Uniformity in federal statutory jurisprudence is a value respected by all inferior courts, and while this Court of course must follow the Seventh Circuit's precedent wherever it might direct, the Court declines Plaintiff's invitation to read *Briggs* as a one-against-the-world break with all of the other caselaw from the Seventh Circuit and elsewhere that the

Court has located in this area. In addition, this case sits in a different factual posture than *Briggs*, as the parties at bar have not indicated that neither side wants an arbitration as opposed to in-court litigation.

Plaintiff offers only two other possible grounds for denying a stay. First, in her response, Plaintiff alludes without meaningful elaboration to the fact that if Defendant had already made a demand for arbitration under Section 4 of the FAA, then Plaintiff would have had the chance to evaluate whether the designated arbitral forum is a biased one—a right Plaintiff contends is conferred by Section 4. (D.E. 7 at 3-4.) Assuming *arguendo* that such a right exists (which seems reasonable enough, although Plaintiff presents no authority in support of her assertion), there appears to be no reason why Plaintiff cannot evaluate whether the specifically designated forum is sufficiently biased so as to vitiate the parties' apparent agreement to arbitrate. If Plaintiff believes that is the case, Plaintiff can promptly seek relief in this Court, through a lift-stay motion or other appropriate procedural vehicle. Second, Plaintiff notes (again, without meaningful development) that if Defendant had made "a formal demand under Section 4, . . . [Plaintiff] would have had the opportunity to present a jury demand" if she believed there was a legitimate question as to whether the arbitration clause is enforceable. (D.E. 7 at 3). Plaintiff still has that right, though: if she believes there is a legitimate jury question about enforceability, then Plaintiff can raise the issue in the context of a motion to vacate the stay. *See generally Green Tree*, 531 U.S. at 91 (party seeking to resist arbitration bears burden of persuasion) (collecting authorities). If the arbitration clause proves to be unenforceable, then the Court naturally will not maintain any stay of litigation in favor of an arbitration contemplated by a

legally defective clause.[4]

## CONCLUSION

On the facts of this case, a stay is appropriate under Section 3 of the FAA. For the foregoing reasons, Defendant's motion to stay pending arbitration is granted.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Enter: *April 27, 2004*

---

[4]Aside from Plaintiff's assertion, which the Court has rejected, that Defendant should have moved to compel or otherwise commenced arbitration in addition to moving to stay, Plaintiff has not asserted any grounds for waiver. Nor does it appear that any grounds exist, as Defendant moved to stay less than a month after being served and has not engaged in any other motion practice, participated in discovery, or filed an answer. Waiver can properly be found only where "'the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate,'" *Welborn Clinic v. MedQuest, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) (quoting *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000)), such as by "substantial participation in the opposing party's litigation." *Welborn Clinic*, 301 F.3d at 637.

11